UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERT PETE VEENSTRA III,<br><br>            Petitioner,<br><br>    v.<br><br><br>JOHANNA SMITH,<br><br>            Respondent. | Case No. 1:11-cv-00632-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Albert Pete Veenstra III's Amended Petition

for Writ of Habeas Corpus. (Dkt. 33.) Respondent has filed a Motion for Partial Summary

Dismissal, arguing that some of Petitioner's claims are procedurally defaulted. (Dkt. 34).

Petitioner has filed a response to the Motion (Dkt. 38), and Respondent has filed a reply

(Dkt. 48). Petitioner has filed a Sur-reply and Request for Evidentiary Hearing and

Appointment of Counsel. (Dkt. 52.) Various other motions are also pending.

The Court takes judicial notice of the records from Petitioner's state court

proceedings, lodged by Respondent on September 12, 2012, and January 11, 2013. (Dkt.

10, 18.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir.

2006). Having carefully reviewed the record, including the state court record, the Court

finds that the parties have adequately presented the facts and legal arguments in the briefs

**MEMORANDUM DECISION AND ORDER  1**

and record and that the decisional process would not be significantly aided by oral argument. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, the Court enters the following Order granting Respondent's Motion for Partial Summary Dismissal and dismissing with prejudice Claims One, Three, and Six through Eleven as procedurally defaulted.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in *Veenstra v. State*, Docket Nos. 35310 & 36838, Op. 424 (Idaho Ct. App. April 4, 2011) (unpublished), which is contained in the record at State's Lodging F-9. Petitioner was on probation for a 1993 conviction for lewd conduct with a minor when, in 1999, he was accused of molesting his daughter and his daughter's friend. Petitioner passed a polygraph examination (the "Kurz polygraph") with respect to the girls' accusations. (*Id.* at 1.) Petitioner was also accused of violating his probation by selling prescription drugs and took a separate polygraph (the "Touchette polygraph") with respect to those allegations. It appears that Petitioner either failed the Touchette polygraph or admitted to the drug allegations during the examination.

After the Kurz polygraph indicated that Petitioner had been truthful when he denied molesting his daughter and her friend, Petitioner was released from police custody and, although no charges were filed based on the girls' allegations, he still had an upcoming probation violation hearing. Before the hearing, Petitioner fled to Mexico and evaded capture until 2004. It was not until after Petitioner's extradition that he was

charged with two counts of lewd conduct with a minor under sixteen based on his alleged molestation of his daughter and her friend. (State's Lodging F-9 at 1-2.)

On the first day of trial, defense counsel made an oral motion in limine seeking admission of the Kurz polygraph evidence. The trial court denied the motion. Counsel later moved to introduce a police report that referred to the polygraph, but the court denied that motion as well.

During opening statements, both the prosecutor and defense attorney referred to Petitioner's prior conviction for lewd conduct with a minor. In the middle of trial, defense counsel successfully moved to exclude the testimony of Petitioner's niece, the victim of that previous crime.

At one point during the trial, Petitioner's probation officer testified as to the reasons he decided to institute proceedings to revoke Petitioner's probation. The witness stated that the information involving Petitioner's sale of prescription drugs "came up as a result of a polygraph" (the Touchette polygraph). (State's Lodging A-2 at 121.) This was the only reference to any polygraph that the jury heard throughout the trial, and defense counsel did not object or move to strike the testimony. Trial counsel also did not object when a sheriff testified that victims of child sexual abuse often delay reporting the abuse and, when they do report, there is often a piecemeal disclosure; very rarely do child victims tell police in a single interview everything that happened to them. (State's Lodging A-2 at 142-43.)

**MEMORANDUM DECISION AND ORDER  3**

The jury found Petitioner guilty. In November 2005, Petitioner was sentenced to two concurrent unified prison terms of thirty years, with fourteen years fixed. (*Id*. at 2; Am. Pet. at 1-2.) On direct appeal, Petitioner argued only that the district court abused its discretion by excluding evidence of the Kurz polygraph, which tended to show that Petitioner was not deceptive when he denied molesting the girls. (State's Lodging B-1.) Petition did not argue that the evidence should have been admitted for its truth, but that it was admissible to rebut the state's theory that Petitioner's flight to Mexico showed a consciousness of guilt as to the molestation allegations. (*Id*.) The Idaho Court of Appeals assumed without deciding that the exclusion of the polygraph was erroneous, but concluded that any such error was harmless beyond a reasonable doubt. (State's Lodging B-4 at 3-4.) Petitioner filed a petition for review, which the Idaho Supreme Court denied. (State's Lodging B-7.)

Petitioner next filed a pro se petition for postconviction relief in state court, raising the following claims: (1) plain error; (2) prosecutorial misconduct; (3) ineffective assistance of trial counsel based on counsel's failure (a) to move for a mistrial when Petitioner's probation officer referred briefly to the Touchette polygraph, (b) to summon Special Agent Kurz, who had administered the Kurz polygraph, (c) to reasonably investigate the admissibility of polygraph evidence, and (d) to object when the sheriff gave "expert testimony on the emotional and psychological factors involved in child sex abuse." Petitioner also asserted that his appellate counsel was ineffective for allegedly

failing to "file an appeal with any issues of substance." (State's Lodging C-1 at 2-3.)

After the parties filed motions for summary disposition, the state district court court granted Petitioner's belated request for counsel. (State's Lodging C-2 at 296.) Counsel declined to amend the pro se petition, informing the trial court that Petitioner had asked counsel "to submit what he has already submitted himself and to not redesign that in any way."[1] (State's Lodging C-3 at 12.) The trial court dismissed the petition. (State's Lodging C-2 at 311.) On appeal, Petitioner argued that trial counsel was ineffective for failing to move for a mistrial after the probation officer referenced the Touchette polygraph because the reference allowed the jury to infer that Petitioner had failed a polygraph, and that this error—viewed cumulatively with the district court's exclusion of the Kurz polygraph—prejudiced Petitioner. Petitioner also argued that trial counsel should have objected to the sheriff's expert testimony and that direct appeal counsel should have presented the argument regarding the Kurz polygraph in a more expansive way. (State's Lodging E-5.)

While that appeal was pending, Petitioner filed a pro se successive petition for postconviction relief. The successive petition argued that Petitioner's trial counsel was ineffective for failing (1) to move prior to trial to exclude reference to Petitioner's prior lewd conduct conviction; (2) to move to suppress the psychosexual evaluation conducted for sentencing purposes; (3) to inform Petitioner of his right to remain silent and have a

---

[1] Petitioner disputes these statements.

**MEMORANDUM DECISION AND ORDER  5**

lawyer present during the psychosexual evaluation; and (4) to allow Petitioner to testify on his own behalf. (State's Lodging D-1 at 2-3.) Petitioner also argued that direct appeal counsel was ineffective by not properly examining the case or filing a brief containing the best arguments, and that his initial postconviction counsel was ineffective in not filing an amended petition. (*Id.* at 3.) The trial court dismissed the successive petition. Petitioner appealed, arguing that the district court should have appointed him counsel before summarily dismissing the successive petition; he also argued that trial counsel was ineffective in failing to file a pretrial motion to exclude evidence of Petitioner's prior conviction and that postconviction counsel should have amended the initial petition to include this claim.[2] (State's Lodging F-6.)

---

[2] Idaho's Uniform Post-Conviction Procedure Act generally requires that all claims be raised in the initial postconviction petition. *See* Idaho Code § 19-4908. However, the statute allows for claims to be raised in a successive petition if the petitioner shows "sufficient reason" why the claim was not raised, or was inadequately raised, in the initial petition. Petitioner's argument regarding postconviction counsel's failure to amend the initial postconviction petition was directed at this exception to the general procedural rule that all claims not raised in an initial petition are deemed waived.

At the time of Petitioner's postconviction proceedings, Idaho courts had long held that ineffective assistance of initial postconviction counsel could constitute a "sufficient reason" under § 19-4908 to allow a petitioner to raise a claim in a successive petition. *See Palmer v. Dermitt*, 635 P.2d 955, 959-60 (Idaho 1981), *overruled by Murphy v. State*, No. 40483, ___ P.3d ___, 2014 WL 712695 (Idaho Feb. 25, 2014).

But the Idaho Supreme Court recently reversed course. In *Murphy*, the court surveyed what it believed to be the current state of federal law on the subject of ineffective assistance of postconviction counsel and determined that, in accord with such law, "sufficient reason" under § 19-4908 does *not* include ineffective assistance of postconviction counsel. *Murphy*, 2014 WL 712695 at *5. Though the Idaho Supreme Court correctly stated that there is no federal constitutional right to postconviction counsel, it did not discuss the fact that under more recent federal habeas law, a petitioner *may*, in fact, assert ineffective assistance of initial postconviction counsel as cause to excuse the procedural default of claims of ineffective assistance of trial or appellate counsel. *See Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Trevino v. Thaler*, 133 S. Ct.

The appeals involving Petitioner's initial and the successive postconviction petitions were consolidated, and the Idaho Court of Appeals affirmed both dismissals. (State's Lodging F-9.) The Idaho Supreme Court denied Petitioner's petition for review. (State's Lodging F-15.)

Petitioner filed his initial federal Petition in December 2011 and an Amended Petition in May 2013. Respondent now moves for summary dismissal of Claims One, Three, and Six through Eleven.

Claim One alleges that Petitioner was deprived of his due process right to present a defense when the trial court excluded evidence that Petitioner had passed the Kurz polygraph with respect to the sexual abuse allegations.

Claim Three asserts that trial counsel was ineffective in "failing to conduct a reasonable pre-trial investigation on the admission of evidence as complex as government-initiated government-administrated polygraph exams." (Am. Pet., Att. A, Dkt. 33-1, at 9.)

Claim Six appears to be an expansion of Claim One and alleges that the trial court erred by denying Petitioner's motion seeking admission of the police report that referred to the Kurz polygraph.

In Claim Seven, Petitioner alleges he was denied the effective assistance of counsel when his trial attorney failed, prior to trial, to move to exclude evidence of

1911 (2013); *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013) (applying *Martinez* to underlying claims of ineffective assistance of appellate counsel).

**MEMORANDUM DECISION AND ORDER  7**

Petitioner's prior lewd conduct conviction and acknowledged the conviction in his opening statement. Though Petitioner's previous victim was ultimately not allowed to testify, the jury was aware that Petitioner had committed the alleged crimes while on probation for another lewd conduct offense.

Claim Eight asserts ineffective assistance of trial counsel and alleges that counsel refused to allow Petitioner to testify.

Claim Nine alleges that trial counsel was ineffective in failing to advise Petitioner of his right, later established by the Idaho Supreme Court in *Estrada v. State*, 149 P.3d 833 (Idaho 2006), to remain silent during the psychosexual evaluation conducted for sentencing purposes.

Claim Ten asserts that direct appeal counsel was ineffective in failing to raise on appeal a claim of ineffective assistance of trial counsel, due to Idaho's rule that such claims are generally reviewed in postconviction proceedings rather than on direct appeal.

Claim Eleven asserts that the evidence at trial was insufficient to convict, that Petitioner is actually innocent, and that his conviction therefore violates due process.

## PRELIMINARY MOTIONS

There are several preliminary motions pending before the Court. As an initial matter, the Court will grant Petitioner's Motion for Extension of Time to file his response to the Motion for Partial Summary Dismissal (Dkt. 36), as well as Respondent's two Motions for Extensions of Time and Motion To File Oversize Brief. (Dkt. 41, 42, 47.)

Petitioner's Response and Respondent's Reply are deemed timely.

In October 2013, Petitioner filed an Objection to Respondent's Notice of Lodging of State Court Records, asking the Court to order Respondent to provide Petitioner with a complete copy of the state court records. (Dkt. 43.) Petitioner later clarified that he was only missing two documents. (Dkt. 49.) Respondent has since provided these two documents to Petitioner (Dkt. 50), and Petitioner's request for a Court order is therefore moot.

Petitioner has also filed a Renewed Motion to Augment the Record, providing the Court with an audio recording of the oral argument in the appeal of the dismissal of his successive postconviction petition. (Dkt. 51.) Respondent has similarly filed a Motion to Expand the Record with various records from Petitioner's state court proceedings. (Dkt. 46.) Both motions will be granted. The Court has considered these parts of the record along with all other state court records.

Finally, Petitioner filed a sur-reply in opposition to the Motion for Partial Summary Dismissal, which contains a request for an evidentiary hearing and for appointment of counsel. (Dkt. 52.) The Court will deny both requests. First, an evidentiary hearing is unnecessary in this case because, as explained below, it is clear from the current record that the claims subject to the Motion for Partial Summary Dismissal are procedurally defaulted, that no cause exists to excuse that default, and that no miscarriage of justice will occur if the claims are not heard on the merits.

Second, there is no constitutional right to counsel in a habeas corpus action.

*Coleman v. Thompson*, 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or an evidentiary hearing is required in his case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Prior to reaching the merits of the claims in the Petition, the Court must address a narrow procedural issue—whether Petitioner properly presented his federal claims to the Idaho Supreme Court and whether, if he did not, cause and prejudice (or actual innocence) exists to excuse that failure—for which appointment of counsel is not required. Further, it appears from Petitioner's filings that he has been able to adequately bring his claims and protect his interests to date. The Court understands that Petitioner does not have legal training or legal resources. Therefore, the Court independently reviews the case citations and references provided by the State for accuracy and applicability. The Court also does its own research to determine whether other cases not cited by the State apply. Finally, the appellate review process before the United States

**MEMORANDUM DECISION AND ORDER  10**

Court of Appeals for the Ninth Circuit is available to ensure that the case has been adjudicated according to the proper legal standards. For these reasons, the Court will deny Petitioner's request for counsel.

## RESPONDENT'S MOTION FOR PARTIAL SUMMARY DISMISSAL

Respondent argues that Claims One, Three, and Six Through Eleven are procedurally defaulted. Petitioner responds that his claims are not defaulted. He argues alternatively that the procedural default of these claims is excused under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

**1.     Standard of Law Governing Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus or claims contained in the petition when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in the light most favorable to the petitioner.

**2.     Standard of Law Governing Procedural Default**

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors

at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847.

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim, "regardless of whether the petitioner [is] proceeding pro se." *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001) (emphasis omitted).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3)

when the Idaho courts have rejected a claim on an adequate and independent state

procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*,

501 U.S. 722, 750 (1991).

To be an "adequate" state ground, a state court's procedural bar must be one that is

"'clear, consistently applied, and well-established' at the time of the petitioner's

purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting

*Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is

"independent" of federal law if it does not rest on federal grounds and is not intertwined

with federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

### 3.     Claims One, Three, and Six through Eleven Are Procedurally Defaulted

#### A.     *Claim One: Violation of Due Process*

In Claim One, Petitioner asserts that he was denied his due process right to present

a defense when the trial court excluded evidence of the Kurz polygraph. Although

Petitioner raised a similar claim on direct appeal, he argued only that the exclusion of the

polygraph evidence constituted an abuse of discretion under state law. (State's Lodging

B-1 at 6.) Further, although Petitioner cited federal cases that discussed the admissibility

of polygraph examinations under the Federal Rules of Evidence, Petitioner did not raise a

constitutional claim that the exclusion of the evidence violated due process. (*Id*. at 7-8.)

Thus, Petitioner failed to present Claim One as a federal constitutional claim on appeal.

Petitioner did argue in his initial postconviction petition appeal that his appellate

counsel was ineffective and, in doing so, cited *Chambers v. Mississippi*, 410 U.S. 284 (1973), for the proposition that "[t]he right to present a complete and meaningful defense is grounded in the Sixth Amendment's Compulsory Process Clause and the Fourteenth Amendment's Due Process Clause." (State's Lodging E-5 at 26.) However, this argument was offered only in support of Petitioner's derivative claim that direct appeal counsel was ineffective in failing to more broadly challenge the trial court's exclusion of the Kurz polygraph. (*Id*. at 23-28.) Although this ineffective assistance claim is related to an independent, substantive claim of denial of the right to present a defense based on the exclusion of the Kurz polygraph, they are distinct claims that must each be separately exhausted. *See Rose v. Palmateer*, 395 F.3d 1108, 1111-12 (2005) ("Here, although Rose's Fifth Amendment claim is related to his claim of ineffective assistance, he did not fairly present the Fifth Amendment claim to the state courts when he merely discussed it as one of several issues which were handled ineffectively by his trial and appellate counsel. While admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts.").

Because Claim One was not properly exhausted in the state courts and because it is now too late to do so, *see* Idaho Code §§ 19-4902 & 19-4908, Claim One is procedurally defaulted.

**MEMORANDUM DECISION AND ORDER  14**

### B.      *Claim Three: Ineffective Assistance of Trial Counsel Based on Failure to Research Issues Involving the Admission of Polygraph Evidence*

Although Petitioner's trial counsel did move (albeit unsuccessfully) for admission of the Kurz polygraph, Claim Three alleges that trial counsel was ineffective "for failing to conduct a reasonable pre-trial investigation" regarding the admission of polygraph evidence. (Am. Pet., Att. A., at 9.) Petitioner raised this argument in his initial postconviction petition. (State's Lodging C-1 at 21.) However, although Petitioner contends that he raised the issue in his initial postconviction appeal (Dkt. 33-1 at 9-10), the only trial ineffectiveness claim presented to the Idaho Court of Appeals was based on counsel's failure to move for a mistrial after the probation officer's brief reference *to the Touchette* polygraph—not the Kurz polygraph. (State's Lodging E-5 at 9-21.)

Further, although Petitioner's brief in the initial postconviction appeal argued an issue relating to the exclusion of the Kurz polygraph, he did not argue that trial counsel was ineffective. Rather, he argued that the *trial court* should not have excluded the evidence—a rehash of the argument on direct appeal that the trial court abused its discretion in applying evidentiary rules—and that *appellate* counsel did not adequately challenge that exclusion. (*Id*. at 22-26.) *See Rose*, 395 F.3d at 1111-12. Because Petitioner did not exhaust Claim Three in the Idaho state courts and it is too late to do so now, Claim Three is procedurally defaulted.

### C.      *Claim Six: Violation of Due Process*

In Claim Six, Petitioner expands Claim One—that the trial court violated due

process by excluding the Kurz polygraph—by arguing that the court should have allowed into evidence a police report, which referred to the Kurz polygraph, as an admission of a party-opponent under Idaho Rule of Evidence 801(d)(2)(A) or as a public record under Rule 803(8). (Am. Pet., Att. A, at 16.) Claim Six is procedurally defaulted for the same reason as Claim One—Petitioner did not raise it as a *federal* claim before the Idaho courts. *See* § 3.A., *supra*. Further, claims asserting violations of state law, such as assertions that the state courts misapplied the rules of evidence, are not cognizable in a federal habeas corpus action. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law . . . ."); *see also Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994) (noting that generally federal habeas relief is unavailable for alleged errors in interpretation and application of state law).

### D. *Claim Seven: Ineffective Assistance of Trial Counsel Regarding Rule 404(b) Evidence*

Claim Seven alleges that trial counsel should have moved—prior to trial—to exclude evidence of his previous lewd conduct conviction against his niece, N.C., under Idaho Rule of Evidence 404(b). (Am. Pet., Att. A, at 20.) Though counsel successfully moved, during trial, to exclude the niece's testimony, Petitioner argues that a pretrial motion would have prohibited *any* reference to the conviction. Both the prosecutor and defense counsel discussed the prior conviction in opening statements, and several witnesses testified to their knowledge that Petitioner had molested N.C. and was on probation for that offense at the time of the alleged sexual abuse of Petitioner's daughter

**MEMORANDUM DECISION AND ORDER  16**

and her friend.

Petitioner did not raise this claim in his initial postconviction petition. Though he raised it in his successive petition (State's Lodging D-1 at 2-9), the Idaho Court of Appeals recognized that this claim was barred unless Petitioner could show sufficient reason, such as ineffective assistance of postconviction counsel, for his failure to raise it in the initial petition.[3] (State's Lodging F-9 at 13, citing Idaho Code § 19-4908.) The court went on to determine that, because Petitioner had not raised the possibility of a valid claim in his pro se petition, his later-appointed postconviction counsel had not performed deficiently by failing to "explore the entire criminal case record for every conceivable claim." (*Id*. at 14.) Therefore, the court determined that Petitioner had not shown sufficient reason for his failure to raise the claim in his initial petition, and it invoked the state procedural rule that the claim had been waived. (*Id*. at 15.)

Petitioner has not shown that this procedural bar—established in Idaho Code § 19-4908—was unclear, inconsistently applied, or not well-established at the time of his postconviction proceedings. Thus, the state court's refusal to entertain Claim Seven was based on an adequate and independent state ground, and the claim is procedurally defaulted. *Klauser*, 266 F.3d at 1093-94.

---

[3] As noted above, the Idaho Supreme Court has recently held that ineffective assistance of initial postconviction counsel does not qualify as "sufficient reason" to excuse the waiver of claims under Idaho Code § 19-4908. *Murphy*, 2014 WL 712695. *Murphy*, however, is not applicable to this case because it was decided after the Idaho Court of Appeals issued its opinion in Petitioner's postconviction proceedings.

E.    ***Claim Eight: Ineffective Assistance of Trial Counsel Based on Alleged Failure to Allow Petitioner to Testify***

Petitioner argues in Claim Eight that his trial counsel was ineffective for refusing to allow Petitioner to testify in his own defense. (Am. Pet., Att. A, at 23.) Like Claim Seven, this claim was raised only in Petitioner's successive petition for postconviction relief, and the Idaho Court of Appeals did not address it, relying on the adequate and independent procedural ground that the claim was waived because it had not been raised in the initial petition. (State's Lodging F-9 at 13-15.) Therefore, like Claim Seven, Claim Eight is procedurally defaulted.

F.    ***Claim Nine: Ineffective Assistance of Trial Counsel Based on Failure to Advise Regarding the Psychosexual Evaluation***

In *Estrada v. State*, 149 P.3d 833, 837-39 (2006), the Idaho Supreme Court held that the Sixth Amendment guarantees a criminal defendant the right to counsel during a psychosexual evaluation prepared for sentencing purposes and that the defendant has a Fifth Amendment right not to participate in the evaluation. Petitioner asserts in Claim Nine that Petitioner's trial attorney was ineffective in failing to advise him that he could exercise this Fifth Amendment right. (Am. Pet., Att. A, at 25.)

This Claim is procedurally defaulted for the same reasons as Claims Seven and Eight. The Idaho Court of Appeals declined to review it because it had not been raised in Petitioner's initial postconviction petition—an adequate and independent state procedural ground.

**MEMORANDUM DECISION AND ORDER  18**

### G. Claim Ten: Ineffective Assistance of Direct Appeal Counsel Based on Failure to Raise Ineffective Assistance of Trial Counsel Claims

Claim Ten asserts that Petitioner's appellate counsel was ineffective for not raising on direct appeal claims of ineffective assistance of trial counsel. (Am. Pet., Att. A, at 27.) However, Petitioner argued in his postconviction petitions only that appellate counsel failed to "file an appeal with any issues of substance" or "make a conscientious examination of the case and file a brief in support of the best arguments to be made." (State's Lodging C-1 at 3, D-1 at 3.) He did not specifically argue Claim Ten and therefore did not exhaust it.

In Idaho, ineffective assistance of counsel claims that require development of the record must be brought on postconviction review, because direct appellate review does not provide for development of the record to support an ineffective assistance of counsel claim. Petitioner contends that this procedural aspect of Idaho law is unconstitutional because it means that postconviction petitioners in Idaho do not have a right to counsel on their only chance to raise claims of ineffective assistance of trial or appellate counsel. This contention is without merit because there is no constitutional right to the effective assistance of counsel during postconviction proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). However, the same concerns identified by Petitioner led the United States Supreme Court to create an equitable exception to the general rule that postconviction counsel's ineffectiveness cannot constitute cause to excuse a procedural default, which the Court will address below in its discussion of *Martinez v. Ryan*, 132 S.

Ct. 1309 (2012). *See* § 4, *infra*.

Petitioner also argues that he did not have to exhaust Claim Ten in the state courts because "there is an absence of available State corrective process" or because "circumstances exist that render such process ineffective to protect [his] rights" under 28 U.S.C. § 2254(b)(1)(B)(i) and (ii). (Dkt. 38 at 15.) However, exhaustion is not excused under these subsections so long a petitioner "has the right under the law of the State to raise, *by any available procedure*, the question presented." 28 U.S.C. § 2254(c) (emphasis added). Idaho law allows ineffective assistance of counsel claims to be raised in collateral proceedings under the Uniform Post-Conviction Procedure Act, Idaho Code § 19-4901 *et seq.* Counsel may be appointed in Idaho postconviction proceedings at the discretion of the court, Idaho Code § 19-4904, but a state court's failure to appoint postconviction counsel—though it may affect the *quality* of the postconviction petitioner's request for a remedy—does not affect the *availability* of that remedy. Therefore, Petitioner's statutory argument fails.

### H.     *Claim Eleven: Insufficiency of Evidence and Actual Innocence*

Petitioner alleges in Claim Eleven that the evidence at trial was insufficient to convict him and that he is actually innocent. (Am. Pet., Att. A, at 30.) In his response to the Motion for Partial Summary Dismissal, Petitioner clarifies that he is arguing actual innocence as a "gateway" in order to excuse the procedural default of other claims. This is the only actual innocence argument Petitioner could make, as there is no freestanding

claim of actual innocence available in a federal habeas action. *See Herrera v. Collins*, 506 U.S. 390, 400-04 (1993). The Court will discuss this gateway argument in § 5, *infra*.

With respect to the insufficiency of the evidence claim, Petitioner did not raise this claim in any state court and can no longer do so. Therefore, it is unexhausted and procedurally defaulted.

### I.     *Conclusion Regarding Defaulted Claims*

For the reasons set forth above, Claims One, Three, and Six through Eleven are procedurally defaulted. However, that conclusion does not end the inquiry. If a claim is procedurally defaulted, a federal court can still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991), or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

### 4.     **Petitioner Has Not Established Cause and Prejudice to Excuse the Procedural Default of Claims One, Three, and Six through Eleven**

### A.     *General Standard of Law for Cause and Prejudice under* Coleman v. Thompson

A procedurally defaulted claim may be heard on the merits if a petitioner establishes cause and prejudice to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show "cause" for a procedural default, a petitioner must ordinarily

demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

**B.**   ***Standard of Law for Cause and Prejudice under* Martinez v. Ryan**

A petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during the postconviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), established a limited exception to the *Coleman* rule. *Martinez* held that inadequate assistance of postconviction review ("PCR") counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315.  In *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit extended *Martinez*, holding that it can also apply to underlying claims of ineffective assistance of appellate counsel.

In *Trevino v. Thaler*, the Supreme Court described the *Martinez* analysis as

consisting of four prongs:

> We consequently read *Coleman* as containing an
> exception, allowing a federal habeas court to find "cause,"
> thereby excusing a defendant's procedural default, where (1)
> the claim of "ineffective assistance of trial counsel" was a
> "substantial" claim; (2) the "cause" consisted of there being
> "no counsel" or only "ineffective" counsel during the state
> collateral review proceeding; (3) the state collateral review
> proceeding was the "initial" review proceeding in respect to
> the "ineffective-assistance-of-trial-counsel claim"; and (4)
> state law requires that an "ineffective assistance of trial
> counsel [claim] . . . be raised in an initial-review collateral
> proceeding."

133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21)

(alterations in original).

The third and fourth prongs of the analysis are rarely in dispute. With respect to

the third prong, the *Martinez* exception applies only to the lack of counsel or

ineffectiveness of counsel in the *initial* postconviction review proceeding. It "does not

extend to attorney errors in any proceeding beyond the first occasion the State allows a

prisoner to raise a claim of ineffective assistance." *Martinez*, 132 S. Ct. at 1320. Rather,

the Court in *Martinez* was singularly concerned that, if ineffective assistance of trial

counsel claims were not brought in the collateral proceeding which provided the first

occasion to raise such claims, the effect was that the claims could not be brought *at all.*

*Id.* at 1316. Therefore, a petitioner may not assert as cause attorney error that occurred in

"appeals from initial-review collateral proceedings, second or successive collateral

proceedings, [or] petitions for discretionary review in a State's appellate courts." *Id.* at

1320.

With respect to the fourth prong—that state law must require ineffective assistance of counsel ("IAC") claims to be brought in an initial-review collateral proceeding—the Supreme Court in *Trevino* extended *Martinez* to apply not only where a State *requires* IAC claims to be raised in postconviction proceedings, but also where a State's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921. Therefore, *Martinez* applies in Idaho where the post-conviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been brought and developed in an evidentiary hearing. *See Matthews v. State*, 839 P.2d 1215, 1220 (Idaho 1992) (recognizing that in Idaho the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," though in limited instances such claims may be brought on direct appeal "on purported errors that arose during the trial, as shown on the record").

The two strongly disputed issues in a *Martinez* inquiry are generally the first prong, whether an underlying IAC claim is substantial, and the second prong, whether PCR counsel rendered ineffective assistance by failing to raise that IAC claim in state postconviction proceedings.

<u>i.</u>      <u>Prong One: Substantiality of Underlying IAC Claims</u>

For the *Martinez* exception to apply, a petitioner must bring forward facts demonstrating that his underlying IAC claim is substantial. The United States Supreme Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S. Ct. at 1318 (comparing the standard for certificates of appealability from *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether an IAC claim is substantial requires a federal district court to examine the claim under *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense or what evidence to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a particular theory or issue in the case is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

If a petitioner shows that counsel's performance was deficient, the next step in the

*Strickland* inquiry is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96.

These standards from *Strickland* for determining deficient performance and prejudice, are, of course, the standards for an eventual review of the merits of the underlying IAC claim. The question whether an IAC claim is substantial under *Martinez* is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should

issue. *See Martinez*, 132 S.Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). Thus, to determine whether a claim is substantial, *Martinez* requires the district court to *review* but not *determine* whether trial or appellate counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to *determine* only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

ii.     Prong Two: Lack of PCR Counsel or Ineffective Assistance of PCR Counsel

In addition to showing that the underlying IAC claim is substantial, a petitioner seeking to invoke *Martinez* must also show either that he had no counsel on initial postconviction review, or that hi sPCR counsel was "ineffective under the standards of *Strickland*." 132 S. Ct. at 1318; *see Trevino*, 133 S. Ct. at 1918. "Ineffectiveness" is a term defined by *Strickland* as (1) deficient performance and (2) a reasonable probability of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

As to deficient performance, not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez*; if the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards," the

**MEMORANDUM DECISION AND ORDER  28**

PCR attorney's performance does not constitute "cause." 132 S. Ct. at 1319. The

*Strickland* standards for analyzing deficient performance set forth above apply with equal

force to PCR counsel in the context of a *Martinez* argument. Importantly, PCR counsel

"is not necessarily ineffective for failing to raise even a nonfrivolous claim." *Sexton v.*

*Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

If PCR counsel's performance is deficient, then the court must consider whether

that performance was prejudicial under *Strickland*. *See Clabourne v. Ryan*, No. 09-99022,

___ F.3d ___, 2014 WL 866382, *11 (9th Cir. March 5, 2014). Therefore, even if a

petitioner shows that his IAC claims are substantial under the first *Martinez* prong, he

must still show that postconviction counsel rendered deficient performance and that, "but

for post-conviction counsel's failure to raise [the substantial IAC] claims, there is a

reasonable probability that the result of the post-conviction proceeding would have been

different" under the second prong. *Id.* at *12. These two inquiries will, at times, collapse

into one. *Id.* at *16 ("Under the circumstances of this case, if [the petitioner] succeeds in

demonstrating that he was prejudiced by the failure of his post-conviction counsel, he will

necessarily have established that there is at least 'some merit' to his claim that he suffered

ineffective assistance of trial counsel at resentencing.").

The Court may address either inquiry first, and the resolution of one prong may

obviate the need to address the other. *See Martinez*, 132 S. Ct. at 1319 ("When faced with

the question whether there is cause for an apparent default, a State may answer that the

**MEMORANDUM DECISION AND ORDER  29**

ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

### C. *Analysis of Cause and Prejudice as Applied to Petitioner's Claims*

#### i. Traditional, or *Coleman*, Cause and Prejudice

Petitioner does not assert that traditional, or *Coleman*, cause exists to excuse the procedural default of his claims. Because Petitioner's *Martinez* argument applies only to those defaulted claims that allege ineffective assistance of counsel, Petitioner has not contended that cause exists with respect to Claims One, Six, or Eleven, none of which are IAC claims. *See Hunton v. Sinclair*, 732 F.3d 1124, 1126-27 (9th Cir. 2013), *cert. filed*, Feb. 18, 2014 (declining to extend *Martinez* to *Brady* claims).

The Court now turns to Petitioner's argument that cause exists under *Martinez* to excuse the procedural default of the IAC claims subject to the instant Motion.

#### ii. *Martinez* Cause and Prejudice

Because the *Martinez* exception applies only to IAC claims, the only defaulted claims to which it might apply are Claims Three, Seven, Eight, Nine, and Ten. After a thorough review of the record, the Court concludes that Petitioner is unable to show either that the procedurally defaulted IAC claims are substantial or that his PCR counsel performed deficiently under *Strickland*.

As an initial matter, *Martinez* does not apply to Claim Three. Petitioner raised this

claim in his initial postconviction petition, but did not raise it *on appeal* from the state district court's dismissal of that petition. Because the narrow exception created in *Martinez* does not apply to alleged ineffectiveness of PCR counsel in "appeals from initial-review collateral proceedings," it cannot be used to excuse the default of Claim Three. *Martinez*, 132 S. Ct. at 1320.[4]

Claim Seven, which alleges that trial counsel should have moved prior to trial to exclude any reference to Petitioner's previous lewd conduct conviction is insubstantial because, at the time of Petitioner's trial, it was virtually impossible to get such evidence excluded in child sexual abuse cases. For many years, Idaho courts had routinely permitted the admission of previous allegations or convictions of sexual molestation under Idaho Rule of Evidence 404(b), which prohibits the admission of evidence of prior acts to prove action in conformity with character, but allows for the admission of such evidence for other purposes. In *State v. Moore*, 819 P.2d 1143, 1145 (Idaho 1991),[5] the Idaho Supreme Court upheld the admission of prior, uncharged child sexual abuse despite

---

[4] To the extent that the Ninth Circuit in *Clabourne* appeared to rely on postconviction counsel's deficient performance *on appeal* from the dismissal of a postconviction petition, *see Clabourne*, 2014 WL 866382 at *9, such an approach is contrary to *Martinez*, which clearly does not apply to errors by PCR counsel in appeals from denials of postconviction petitions, 132 S. Ct. at 1320. The failures of Clabourne's postconviction counsel *during the initial review collateral proceeding* are what was relevant in that case: PCR counsel did not comply with the rules for postconviction petitions even after being admonished to do so by the state court. *Clabourne*, 2014 WL 866382 at *9. Further, the state in *Clabourne* did not dispute that PCR counsel rendered deficient performance, so the court's discussion of PCR counsel's performance in the postconviction appeal was dicta. *Id.* at *12.

[5] *Moore* was later overruled by *State v. Grist*, 209 P.3d 1185 (Idaho 2009), which is discussed below.

**MEMORANDUM DECISION AND ORDER  31**

Rule 404(b)'s general rule that "evidence of other criminal acts or offenses is inadmissible to prove the character of a person in order to show that he committed the crime for which he is on trial." The court held that the evidence of prior sexual misconduct was admissible for another purpose—to bolster the credibility and provide corroboration of the victim's testimony to show that the defendant had a common scheme or plan. *Id.* at 1145-46.

The state supreme court applied *Moore* in *State v. Tolman*, where the court held that in a child molestation case, "beyond any other, the defendant's plea of innocence challenges the credibility of the alleged victim. The challenge inheres in the very nature of the context and usually demands an answer long before the prosecution's turn for rebuttal. A minimal defense, even when the defendant elects not to testify, demands that the alleged victim be accused of falsehood, spite, or delusion." 828 P.2d 1304, 1310 (Idaho 1992).[6] Therefore, to counter a defendant's not guilty plea, which inherently challenges the credibility of the alleged victim in a child sexual abuse case, Idaho courts allowed prior sexual misconduct evidence to help the jury "compare patterns and methods, details and generalities, consistencies and discrepancies, and thereby [make] a more meaningful and accurate assessment of the parties' credibility." (*Id.*)

*Moore* and *Tolman* led Idaho courts to treat child sex abuse cases differently from other types of cases where evidence of prior bad acts would clearly be inadmissible under

---

[6] Like *Moore*, *Tolman* was also overruled by *Grist*, 209 P.3d 1185.

**MEMORANDUM DECISION AND ORDER  32**

Rule 404(b). As the Idaho Supreme Court later recognized, evidence of previous child molestation charges was "'held to have been properly admitted so often that it seem[ed] to constitute a special exception to the character evidence prohibition.'" *Grist*, 205 P.3d at 1187 (quoting D. Craig Lewis, *Idaho Trial Handbook*, 2d ed., § 13:1 (2005)).

It was not until the 2009 decision in *Grist v. State* that the Idaho Supreme Court scaled back the admissibility of prior child molestation allegations or convictions. Though the court "declined to overrule *Moore* and *Tolman* in their entirety," it held that "[a]ny decision from this Court or the Court of Appeals that suggests that evidence offered in a case involving an allegations of sexual misconduct with a child should be treated differently than any other type of case is no longer controlling authority in Idaho's courts." *Grist*, 205 P.3d at 1187. The court recognized that the "theoretical underpinning of the admissibility of uncharged misconduct for purposes of 'corroboration' as articulated in *Moore* is indistinguishable from admitting such evidence based upon the accused's propensity to engage in such behavior based upon his or her past behavior." *Id.* at 1190. After *Grist*, Idaho courts may no longer admit evidence of prior sexual misconduct allegations when the probative value of that evidence "is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior." *Id.*

Petitioner's trial counsel did not have the benefit of *Grist* at the time of Petitioner's trial in 2005. Thus, in accordance with the state of the law at the time, counsel reasonably

predicted that a motion to exclude all evidence of Petitioner's prior conviction would have been denied. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) ("A lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law."). Moreover, counsel's strategy to discredit the testimony of the victims was based in part on their knowledge that Petitioner had committed the same crime before. The victims testified that they did not disclose the abuse earlier because they felt they could not tell anyone and did not think anyone would believe them. Trial counsel challenged this explanation because the girls and their families knew about Petitioner's prior sexual misconduct and, therefore, the girls' accusations would have been believed. (State's Lodging A-2 at 51-57, 103-04.)

Given the near certainty that the prior conviction would come in, Petitioner's counsel made a reasonable tactical decision to try to use it to Petitioner's advantage in any way possible and to acknowledge the conviction in opening statement. That counsel's strategy did not ultimately work does not establish ineffective assistance. *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Further, trial counsel successfully moved to exclude the prior victim's testimony, thereby keeping the details of the crime—which were quite similar to how Petitioner's daughter's friend described the abuse—out of the minds of the jurors. Petitioner has simply not shown that Claim Seven is substantial, and initial PCR counsel did not perform deficiently in failing to fully exhaust it.[7]

---

[7] With respect to Claim Seven, Petitioner also argues that because the Idaho courts do not review any pro se filings submitted by counseled defendants or postconviction petitioners, if

Claim Eight, alleging that trial counsel was ineffective in not allowing Petitioner to testify, is also insubstantial. Petitioner has not attempted to argue that this Claim is substantial, and the Court has found nothing in the record to suggest that counsel performed deficiently by advising Petitioner not to take the stand. Petitioner could have been impeached with the details of his prior lewd conduct conviction even though his niece did not testify. Further, Petitioner has not provided any indication of what he would have said if he had testified. Therefore, there is no factual support for Petitioner's claim that he was prejudiced by his failure to testify, and PCR counsel was not ineffective under the standards of *Strickland* for not raising the claim during postconviction proceedings.

Claim Nine, which is based on trial counsel's failure to advise Petitioner of his right to remain silent during the psychosexual evaluation, is not substantial because prior

---

counsel refuses to raise a claim there is no way for the defendant or petitioner himself to raise it. (Dkt. 38 at 8-9.) However, to fairly present claims in a circumstance where the petitioner disagrees with counsel's narrowing of claims, a petitioner must take steps on his own, such as seeking leave of court to introduce a supplemental pro se filing containing the additional claims counsel refused to present. *See Custer v. Hill*, 378 F.3d 968, 974-75 (9th Cir. 2004) (finding no cause to excuse procedural default when petitioner did not take steps to present his supplemental claims at every level of the state court appellate system) (relying on *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997)); *Holloway v. Horn*, 355 F.3d 707, 715-16 (3d Cir. 2004) (concluding that a pro se brief, which was supplemental to brief filed by counsel, fairly presented a claim to the state court); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) ("A petitioner may satisfy the exhaustion requirement by presenting his federal claim in a *pro se* supplemental brief, even if he has an attorney."); *McBride v. Estelle*, 507 F.2d 903, 904 (5th Cir. 1975) (per curiam) (stating that a petitioner's filing of a supplemental pro se brief in addition to the opening brief filed by counsel satisfied § 2254's "presentation" requirement, but affirming dismissal on other grounds).

Petitioner's description of the Idaho courts' general manner of handling pro se filings of represented individuals is insufficient to establish cause. Notably, Petitioner does not assert that he actually attempted to raise Claim Seven on his own by attempting to file a pro se brief in state court.

to the Idaho Supreme Court's 2006 decision in *Estrada*, such a right had not been recognized, and such a claim would have been entirely novel. *See Estrada*, 149 P.3d at 838-39. An attorney does not perform deficiently by failing to anticipate a decision in a later case. *Lowry*, 21 F.3d at 346. Therefore, Petitioner has not shown cause and prejudice to excuse the default of Claim Nine.

Finally, Claim Ten is insubstantial because Petitioner's appellate counsel acted reasonably in not raising, on direct appeal, a claim of ineffective assistance of trial counsel. Idaho appellate courts generally decline to review IAC claims on direct appeal because the record is not sufficiently developed to allow meaningful review of such a claim. *State v. Gomez*, 900 P.2d 803, 805-06) (Idaho Ct. App. 1995) ("We have frequently declined to consider claims of ineffective assistance of counsel on direct appeal because of our inability to resolve such claims on the record of the criminal proceedings, and we have suggested that such claims be pursued by application for post-conviction relief."). Because any such claim raised on direct appeal would not have been entertained, appellate counsel was not ineffective for deciding not to raise a claim of ineffective assistance of trial counsel, and PCR counsel was not ineffective for choosing not to challenge that decision in postconviction proceedings.

### C. *Conclusion Regarding Cause and Prejudice*

For the foregoing reasons, Petitioner has not established cause and prejudice, under *Martinez* or otherwise, to excuse the procedural default of the claims subject to the

instant Motion. Therefore, Petitioner's procedurally defaulted claims are barred unless he can establish that he is actually innocent.

### 5.      Miscarriage of Justice

The Court now considers the second exception to the procedural default doctrine. Petitioner argues that all of his claims are excused from procedural default because he is actually innocent and a miscarriage of justice will result if his claims are not heard on the merits. *See Schlup*, 513 U.S. at 329 (1995); *Murray*, 477 U.S. at 488.

Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Types of evidence that can establish factual innocence include credible declarations of guilt by another person, *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), reliable eyewitness accounts, *Schlup*, 513 U.S. at 331, and exculpatory scientific evidence, *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

Petitioner has not met the heavy burden of showing that he is actually innocent. His protestations of innocence are insufficient. His daughter and her friend offered

harrowing testimony describing what Petitioner did to them, and Petitioner has not established that, more likely than not, every reasonable juror would have disbelieved them. The fact that the victims' memories changed over time does not prove that they made the whole thing up. Moreover, that Petitioner at one point in time passed a polygraph is of no moment. Polygraph results are generally inadmissible precisely because they are *not* considered sufficiently reliable evidence of a person's innocence or guilt.

For these reasons, Petitioner has failed to show that a miscarriage of justice will occur if his procedurally defaulted claims are not heard on the merits.

## CONCLUSION

Claims One, Three, and Six through Eleven were not properly exhausted in the state courts and are procedurally defaulted. Petitioner has not shown cause and prejudice or a miscarriage of justice that would excuse the default. Therefore, Respondent's Motion for Partial Summary Dismissal will be granted.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Extension of Time To File Response to Respondent's Motion for Partial Summary Dismissal (Dkt. 36) is GRANTED. Petitioner's response (Dkt. 38) is deemed timely.

2. Respondent's two Motions for Extension of Time to File Reply (Dkt. 41 &

42) are GRANTED. Respondent's reply (Dkt. 48) is deemed timely.

3.   Petitioner's Objection to Notice of Lodging of State Court Records and Request for Court Order (Dkt. 43) is MOOT.

4.   Respondent's Motion to Expand the Record (Dkt. 46) is GRANTED.

5.   Respondent's Motion to File Oversize Brief (Dkt. 47) is GRANTED.

6.   Petitioner's Renewed Motion to Augment the Record (Dkt. 51) is GRANTED.

7.   Petitioner's Request for Evidentiary Hearing and Appointment of Counsel (Dkt. 52) is DENIED.

8.   Petitioner's Motion for Application of *Martinez v. Ryan* (Dkt. 39) is DENIED.

9.   Respondent's Motion for Partial Summary Dismissal (Dkt. 34) is GRANTED. Claims One, Three, Six, Seven, Eight, Nine, Ten, and Eleven are DISMISSED with prejudice.

10.  Respondent shall file an Answer to the remaining claims (Claims Two, Four, Five, and Twelve) **within 90 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30**

**days** after service of the answer. Respondent has the option of filing a

sur-reply **within 14 days** after service of the reply. At that point, the case

shall be deemed ready for a final decision.



DATED:  **March 26, 2014**

Honorable B. Lynn Winmill
Chief U. S. District Judge