UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERT PETE VEENSTRA III,<br><br>                        Petitioner,<br><br>        v.<br><br>RANDY BLADES,<br><br>                        Respondent. | Case No. 1:11-cv-00632-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Albert Pete Veenstra III's Amended Petition for Writ of Habeas Corpus, challenging his 2005 Gooding County conviction of two counts of lewd conduct with a minor under sixteen years of age. (Dkt. 33.) The Court previously dismissed Claims One, Three, and Six through Eleven as procedurally defaulted. (Dkt. 56). The merits of the remaining claims in the Amended Petition—Claims Two, Four, Five, and Twelve—are now fully briefed. (Dkt. 61, 93.)

Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on September 12, 2012; January 11, 2013; and March 5, 2015. (Dkt. 10, 18, 19, 88.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

The Court has previously recited the facts underlying Petitioner's convictions (*see* Dkt. 56), and the Idaho Court of Appeals described them as follows:

> In 1999, [Petitioner] was on probation for a prior felony judgment of conviction. During [Petitioner's] probation, he was investigated for multiple violations of his probation conditions, including allegations of sexual contact with his minor daughter [Y.V.] and his daughter's minor friend [M.B.]. During the investigation of those crimes, [Petitioner] submitted to a polygraph test conducted by the police ["the Kurz polygraph"]. The results of the test indicated [Petitioner] was being truthful when he denied having sexual contact with the two victims. [Petitioner] was not charged with lewd and lascivious conduct with a minor at that time, but was charged with violating his probation[, based on information—which came to light during an earlier polygraph given to Petitioner ("the Touchette polygraph")— that Petitioner was selling prescription drugs]. Prior to the evidentiary hearing on the probation violation charges, [Petitioner] was released from custody. Upon release, [Petitioner] fled the country. [Petitioner] lived in Mexico until he was arrested in 2004 and extradited to the United States. [Petitioner] was then charged with two counts of lewd and lascivious conduct with a minor under sixteen. I.C. § 18-1508.
>
> Prior to the start of trial, [Petitioner], through a motion in limine, sought to admit into evidence the results of his polygraph examination. [Petitioner] argued that the results of the examination should be admitted for the limited purpose of rebutting any assertion made at trial by the state that [Petitioner] fled the country because he had a guilty

**MEMORANDUM DECISION AND ORDER - 2**

> conscience over committing the sexual molestations and was
> afraid of being prosecuted. Essentially, [Petitioner] suggested
> that, because he was not charged at that time and the
> polygraph indicated he was not guilty, he would not flee in
> fear of those allegations. The district court denied the motion
> based on the rule that polygraph results are not admissible as
> evidence.
>
> At trial, the prosecutor argued that [Petitioner] fled out
> of fear of prosecution for the instant crimes. After trial, a jury
> found [Petitioner] guilty of both charges. [Petitioner] was
> sentenced to concurrent unified terms of thirty years, with
> minimum periods of confinement of fourteen years.

(State's Lodging B-4 at 1-2; *see also* State's Lodging F-9 at 3 n.1.)

The jury found Petitioner guilty of both counts. In November 2005, Petitioner was

sentenced to two concurrent unified prison terms of thirty years, with fourteen years

fixed. (*Id*. at 2; Am. Pet. at 1-2.) His convictions and sentences were affirmed on appeal.

Petitioner's initial and successive state postconviction petitions were unsuccessful.

(State's Lodging F-9.) Petitioner also filed a motion for reduction or correction of

sentence under Idaho Criminal Rule 35. Although the minutes of the sentencing hearing[1]

stated that the district court imposed a 14 to 30-year prison term, the written judgment of

conviction (as well as an identical amended judgment) purported to place Petitioner on a

rider with retained jurisdiction.[2] (State's Lodging H-17.) Petitioner argued that he should

have been placed on the rider program as stated in the written judgment. The trial court

denied the Rule 35 motion, stating that the inclusion of the rider language was a clerical

---

[1]     For reasons not apparent to the Court, the transcript of the sentencing hearing was not included in the state court record on appeal and, therefore, is not in the record before this Court.

[2]     A rider is a sentencing option where the judge imposes a sentence of incarceration, but retains jurisdiction for a period of time. If the defendant is successful on programming while in custody, the judge reconsiders whether to place the defendant on probation instead of continuing his prison sentence.

MEMORANDUM DECISION AND ORDER - 3

error and that the record demonstrated Petitioner was never supposed to be placed on a

rider program. (State's Lodging G-1 at 78.) The Idaho Court of Appeals affirmed.

(State's Lodging H-17.)

Petitioner filed his initial federal Petition in December 2011 and, after exhausting

additional claims in state court, filed an Amended Petition in May 2013. The claims

remaining for adjudication on the merits are the following:

Claim Two: Ineffective assistance of direct appeal counsel based on counsel's failure to raise issues related to the Kurz and Touchette polygraphs under Idaho Rules of Evidence 801 and 803.

Claim Four: Ineffective assistance of trial counsel based on counsel's "failure to request a mistrial or otherwise object" after a probation officer mentioned the Touchette polygraph while testifying.

Claim Five: Ineffective assistance of trial counsel based on counsel's failure to object to improper expert testimony, offered by a sheriff, regarding "emotional and psychological factors involved in child sex abuse" (capitalization omitted).

Claim Twelve: Denial of due process based on the failure of the court or the Idaho Department of Correction to comply with the written judgment of conviction, which included the erroneous rider language.

(Am. Pet., Dkt. 33-1.)

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims adjudicated on the merits in

a state court judgment when the federal court determines that the petitioner "is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances

where the state court's adjudication of the petitioner's claim

> (1)    resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d). Although a federal habeas court reviews the state court's "last

reasoned decision" in determining whether a petitioner is entitled to relief, *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 804 (1991), the state court need not "give reasons before its

decision can be deemed to have been 'adjudicated on the merits'" under § 2254(d),

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002).

Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1) the petitioner must show that the state court—although identifying "the

**MEMORANDUM DECISION AND ORDER - 5**

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Richter*, 562 U.S. at 102. The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

**MEMORANDUM DECISION AND ORDER - 6**

As to the facts, the United States Supreme Court has clarified "that review under §

2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that

evidence not presented to the state court may not be introduced on federal habeas review

if a claim was adjudicated on the merits in state court and if the underlying factual

determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d

984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual

determinations, the petitioner must show that the state court decision was based upon

factual determinations that were "unreasonable . . . in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination

is not unreasonable merely because the federal habeas court would have reached a

different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types

of unreasonable factual determinations that result from procedural flaws that occurred in

state court proceedings: (1) when state courts fail to make a finding of fact; (2) when

courts mistakenly make factual findings under the wrong legal standard; (3) when "the

fact-finding process itself is defective," such as when a state court "makes evidentiary

findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate

the record in making their findings, and the misapprehension goes to a material factual

issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet

apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366

**MEMORANDUM DECISION AND ORDER - 7**

F.3d. 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This strict deferential standard of § 2254(d) applies to habeas claims except in the following narrow circumstances: (1) where the state appellate court did not decide a properly-asserted federal claim; (2) where the state court's factual findings are unreasonable under § 2254(d)(2); or (3) where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In those circumstances, the federal district court reviews the claim de novo. In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1). Rather, the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER - 8**

## DISCUSSION

1.    **Claim Four: Ineffective Assistance of Trial Counsel Based on Counsel's Failure to Object or Request a Mistrial after Testimony Referencing the Touchette Polygraph.**

In Claim Four, Petitioner argues that his trial counsel rendered ineffective assistance by failing to object to move for a mistrial after a witness offered testimony referencing the Touchette polygraph.

### A.    *Specific Factual Basis of Claim Four*

As noted above, Petitioner took a polygraph administered by Probation Officer Touchette. This polygraph gave rise to information that eventually led to Petitioner being charged with a probation violation. "At trial, [the] probation officer . . . gave testimony that [Petitioner] had allegedly violated probation by selling prescription drugs. After defense counsel questioned the probation officer about the process of violating a probationer" (State's Lodging F-9 at 6), the probation officer's testimony continued as follows:

> [Defense Counsel]:  Now, you have probationers in your supervision that you have knowledge of that they have violated their probation in some way, but you don't advise the court; right?
>
> [Probation Officer]: Yes. A lot of it depends on how serious—there's a little leeway we have on how serious the violation is.
>
> [Defense Counsel]:  And in this particular violation, that's what you referenced on the second page of that report of violation, that as concerns sharing prescription drugs with another probationer, you weren't going to violate him for that; right?

[Probation Officer]: Yes, I was going to violate him. *That came—that actual information came up as a result of a polygraph* and—actually, I probably shouldn't say what it was because I don't recall right now. But I know I got the information well after the fact on it.

[Defense Counsel]: Okay. Let's just look at the second page of your report of violation. Isn't it true that it says, "On January 21st, 1999, he," [Petitioner], "admitted that he had sold prescription drugs to Byron Lyons. [Petitioner] said that they were his prescriptions that he had obtained from Dr. Nofziger. The drugs he sold were Halcion, Darvocet, Vicodin. At the time of the violation, a letter was sent to Dr. Nofziger informing him of [Petitioner's] activities. [Petitioner] was told no violation report would be filed at this time. [Petitioner] was also told that this could be used in a violation at a later date if he ever violated his probation again."

[Probation Officer]: Right.

[Defense Counsel]: So that's what I mean where you have probationers that do something that probably is a violation of their probation, but based upon the nature of it, you may not report it to the Court?

[Probation Officer]: Right.

(State's Lodging A-2 at 120-22) (emphasis added). The probation officer indicated that although he had initially decided not to pursue probation violation charges against Petitioner based on his sale of prescription drugs, the probation officer changed his mind after the lewd conduct allegations surfaced. (*Id.* at 122.)

Petitioner alleges (1) that the probation officer's reference to the Touchette polygraph violated the trial court's previous order that during the trial no reference could be made to any polygraph, and (2) that Petitioner's trial counsel should have objected to the reference or moved for a mistrial. (Dkt. 33-1 at 12.)

**MEMORANDUM DECISION AND ORDER - 10**

### B.       Clearly-Established Law

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness.  *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

**MEMORANDUM DECISION AND ORDER - 11**

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense or which arguments to make, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute ineffective assistance simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).

**MEMORANDUM DECISION AND ORDER - 12**

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

When evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d), the Court's review of that claim is "doubly deferential." *Pinholster*, 563 U.S. at 190.

**MEMORANDUM DECISION AND ORDER - 13**

### C.    State Court Decision

In addressing Petitioner's claim that his counsel was ineffective for failing to object or request a mistrial when the probation officer referenced the Touchette polygraph, the Idaho Court of Appeals appropriately cited *Strickland v. Washington* as the governing law regarding ineffectiveness claims. (State's Lodging F-9 at 5.) After reciting the above testimony given by Petitioner's probation officer, the court held that "the lack of objection [by Petitioner's counsel was] a valid tactical decision." The court noted that the jury "was unaware of the polygraph [Petitioner] took with regard to the conduct at issue in this case and had no reason to infer that the polygraph referred to was even taken by" Petitioner. (*Id.* at 7.) The court continued:

> Additionally, even if the jury were to infer that it was [Petitioner] who took the polygraph, it is an extraordinary leap to infer that because the test indicated he had sold prescription drugs at some point during his probation, that he also took a polygraph on the conduct at issue in this case and failed it. This is especially true as the reference to the polygraph was a fleeting one that arose in the context of discussing why [Petitioner] had not been violated at an earlier date for selling prescription medications. Raising an objection in front of the jury to such a benign reference to some polygraph taken at one point while [Petitioner] was on probation would have unnecessarily drawn attention to a polygraph issue.

(*Id.*) The court of appeals also held that, for the same reasons, an objection or request for a mistrial would not have been successful, and Petitioner therefore had not shown prejudice as a result of trial counsel's actions.

### D.     Petitioner Is Not Entitled to Relief on Claim Four

The Idaho Court of Appeals' rejection of Claim Four was not contrary to, nor did

it involve an unreasonable application of, clearly-established Supreme Court precedent,

and Petitioner has not identified any factual finding of the state courts as unreasonable.

*See* U.S.C. § 2254(d). The polygraph reference was brief and vague, and the Court cannot

conclude that the lack of an objection or request for a mistrial constituted deficient

attorney performance. Further, Petitioner has not established that he suffered prejudice as

a result of his trial counsel's actions. Thus, the Court will deny Claim Four.

### 2.     Claim Five: Ineffective Assistance of Trial Counsel Based on Counsel's Failure to Object to Improper Expert Testimony Regarding Child Sex Abuse

Claim Five asserts that Petitioner's trial counsel rendered ineffective assistance by

failing to object to expert testimony regarding psychological issues and behavior of

children who disclose sexual abuse.

### A.     Specific Factual Basis of Claim Five

Gooding County Sheriff Shaun Gough testified for the prosecution. Sheriff Gough

explained that he had been involved in the investigation of "a couple dozen" sexual

misconduct cases and had been trained to investigate sex crimes at POST, the Peace

Officer's Standards and Training Academy. (State's Lodging A-2 at 134-35.) The sheriff

later testified as follows:

> [Prosecutor]:       Now, with respect to investigating—or your training and
> experience investigating sexual crimes or allegations by
> children, is it unusual for a child to delay in reporting an
> abuse?

**MEMORANDUM DECISION AND ORDER - 15**

| [Sheriff Gough]: | It would be unusual for a child to report it right away quick. Most children—I've investigated sex crimes. It's taken victims 10 to 12 years to come forward. |
|---|---|
| [Prosecutor]: | And in this case the fact is that in June of 1999, that's when the disclosure of these events occurred? |
| [Sheriff Gough]: | Yes. |
| [Prosecutor]: | And . . . the allegations were that some of this contact happened in March of the same year, 1999; is that correct? |
| [Sheriff Gough]: | Yes. |
| [Prosecutor]: | Is it unusual to see that kind of delay before a disclosure by a child? |
| [Sheriff Gough]: | Not at all. |

(*Id.* at 141.)

The prosecutor then asked the sheriff about the fact that, during their trial

testimony, Petitioner's victims recounted more instances of sexual molestation than they

had initially disclosed to law enforcement:

| [Prosecutor]: | Is it unusual in your training and your experience for that type of piecemeal disclosure to occur? |
|---|---|
| [Sheriff Gough]: | Not at all. |
| [Prosecutor]: | Do you understand what I mean by that? |
| [Sheriff Gough]: | Yes, I do. It typically happens like that. You have to—when you have a victim that's that young, you have to interview several times to get the whole thing out, because they try to block it out. |
| [Prosecutor]: | So, in other words, it's not unusual for the initial contact they'll say one thing happened, and then if you contact them again, you'll find that there were more events? |

**MEMORANDUM DECISION AND ORDER - 16**

[Sheriff Gough]:      Correct.

(*Id*. at 142-43.)

Petitioner claims that his trial counsel should have objected to this testimony because the prosecution did not establish that the sheriff was qualified offer expert testimony on the reporting of misconduct by victims of child sex abuse. (Dkt. 33-1 at 14-15.)

### B.    State Court Decision

After reciting the above testimony, the Idaho Court of Appeals held that an objection to "this brief line of questioning" would not have been successful and thus that Petitioner could not show prejudice from his trial counsel's failure to object. (State's Lodging F-9 at 9.) The court stated that any objection "would have done no more than call greater attention to the issue" and that the sheriff appeared qualified to testify to the general trends of sexual abuse victims' disclosures.

### C.    Petitioner Is Not Entitled to Relief on Claim Five

The Idaho Court of Appeals' decision that Petitioner could not show prejudice from trial counsel's failure to object to the sheriff's expert testimony was not contrary to, or an unreasonable application of, clearly-established Supreme Court precedent. Additionally, Petitioner has not pointed to any factual finding by the state court that he considers unreasonable. Because Petitioner cannot establish that an objection to the sheriff's testimony would have been granted, he cannot show *Strickland* prejudice with respect to Claim Five.

**MEMORANDUM DECISION AND ORDER - 17**

3.     **Claim Two: Ineffective Assistance of Direct Appeal Counsel with Respect to the Kurz and Touchette Polygraphs and Idaho Rules of Evidence 801 and 803**

In Claim Two, Petitioner asserts that his direct appeal counsel was ineffective in failing, on direct appeal, to argue that the Kurz polygraph should have been admitted as substantive evidence of innocence and to bolster Petitioner's credibility, pursuant either to (1) Idaho Rule of Evidence 801(d)(2)(A) as an admission of a party opponent, or (2) Idaho Rule of Evidence 803(8) as a public record. (Dkt. 33-1 at 6-7.) Although direct appeal counsel did challenge the exclusion of the results of the Kurz polygraph—which tended to show that Petitioner's denial of the lewd conduct allegations was truthful—counsel did so by arguing that the statement was not offered for the truth of the matter asserted, but for the limited purpose of rebutting the state's theory that Petitioner's flight to Mexico showed consciousness of guilt.

A.     *Specific Factual Basis of Claim Two*

On the first day of trial, defense counsel made an oral motion in limine seeking admission of the results of the Kurz polygraph. The trial court denied the motion. Counsel later moved to introduce a police report that referred to the Kurz polygraph, but the court denied that motion as well. On direct appeal, the court of appeals—without deciding whether the exclusion of the Kurz polygraph evidence was erroneous—held that any error in excluding the evidence was harmless. (State's Lodging at B-5.) On appeal from the denial of Petitioner's postconviction petitions, the Idaho Court of Appeals held that direct appeal counsel did not render ineffective assistance in failing to argue that the evidence was admissible under Rules 801 and 803. (State's Lodging F-9.)

**MEMORANDUM DECISION AND ORDER - 18**

### B.        Clearly-Established Law

The *Strickland* principles identified above in the context of ineffective assistance of trial counsel claims apply equally to claims of ineffective assistance of direct appeal counsel. Effective legal assistance does *not* mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "Nothing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id*. at 754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.

To show prejudice with respect to direct appeal counsel, a petitioner must show that his appellate attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission would probably have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised. *Id.* at 1435.

### C.        State Court Decision

In addressing Claim Two, the Idaho Court of Appeals held that polygraph evidence used to bolster a defendant's credibility is inadmissible "because it invades the province of the jury," and that the trial court thus properly disallowed the evidence as

**MEMORANDUM DECISION AND ORDER - 19**

substantive proof. (State's Lodging F-9 at 11.) The court of appeals held that because the
evidence was inadmissible, and therefore Claim Two was without merit, Petitioner's
direct appeal counsel was not ineffective in not raising that argument. (*Id.*)

### D.   *Petitioner Is Not Entitled to Relief on Claim Two*

The Idaho Court of Appeals' rejection of Claim Two was eminently reasonable.
*See* 28 U.S.C. § 2254(d). The Idaho Supreme Court had made clear, several years before
Petitioner's direct appeal, that polygraph results were inadmissible (1) as substantive
evidence of guilt or innocence, or (2) to undermine or bolster the credibility of the
defendant. *See State v. Perry*, 81 P.3d 250, 524-25 (Idaho 2003) ("In this case, the results
of the polygraph are useful to bolster Perry's credibility but do not provide the trier of
fact with any additional information that pertains to Perry's case. *The fact of whether the
alleged act occurred is for the jury to decide*." (emphasis added)).

Direct appeal counsel understandably did not include Claim Two in the appellate
briefing because it was extremely weak—polygraph results simply are not admissible in
Idaho as substantive evidence or credibility evidence. *See Miller*, 882 F.2d at 1434
("[T]he weeding out of weaker issues is widely recognized as one of the hallmarks of
effective appellate advocacy. . . . Appellate counsel will therefore frequently remain
above an objective standard of competence . . . and have caused her client no prejudice
. . . for the same reason—because she declined to raise a weak issue."). Appellate counsel
made the reasonable tactical decision to present the best argument for admissibility of the
Kurz polygraph results—that the results were admissible not as substantive proof, but as
evidence showing Petitioner's state of mind when he fled to Mexico. That this argument

**MEMORANDUM DECISION AND ORDER - 20**

was unsuccessful does not mean that direct appeal counsel was ineffective. *Bashor*, 730 F.2d at 1241.

The double deference that applies when reviewing ineffective assistance claims in habeas proceedings leaves no room for this Court to second-guess the tactical decision of Petitioner's direct appeal counsel with the benefit of hindsight. *See Pinholster*, 563 U.S. at 190; *Strickland*, 466 U.S. at 689. Therefore, Petitioner is not entitled to relief on Claim Two.

**4.     Claim Twelve: Denial of Due Process Based on the Failure to Place Petitioner on a Rider, as Stated in the Written Judgment of Conviction**

In Claim Twelve, Petitioner asserts that he was denied due process because he was never placed on the rider program referenced in the written judgment of conviction.[3]

### *A.     Specific Factual Basis of Claim Twelve*

According to the minutes of the sentencing proceeding, the trial judge sentenced Petitioner to concurrent unified prison terms of thirty years, with fourteen years fixed. (State's Lodging A-2 at 38.) However, the initial and amended judgment, after reciting the sentence of imprisonment, went on to state: "It is further ordered that the Department of Correction take [Petitioner] into custody, *for the commencement of the one hundred and eighty (180) program*, within fourteen (14) days of the date this Judgment is file stamped." (State's Lodging A-1 at 42) (emphasis added).

---

[3]     The Court rejects as meritless Respondent's argument that Claim Twelve presents a question of state law that is not cognizable on federal habeas review. (*See* Dkt. 61 at 35-36.) The Amended Petition unequivocally presents Claims Twelve as a due process claim—a constitutional issue plainly subject to federal review in a habeas corpus action. (Dkt. 33-1 at 33.)

**MEMORANDUM DECISION AND ORDER - 21**

Petitioner filed a motion for correction or reduction of sentence pursuant to Idaho Criminal Rule 35, contending that, contrary to the Judgment, he was not placed on the 180-day rider program. (State's Lodging G-1 at 1-4.) One of Petitioner's exhibits to his motion was a copy of the Amended Judgment, with the rider language crossed out and with the following notation:

> per Matt
> J. Elgee
> Clerk
> 11/29/05
> R.S.

(*Id.* at 66.)

The district judge who presided over Petitioner's Rule 35 motion was the same judge who imposed Petitioner's sentence. (*Id.* at 78.) The judge noted that "Matt" was the judge's law clerk, who had apparently requested deletion of the rider paragraph soon after the amended judgment was entered. The court determined the rider language was a clerical error, and the record before the court demonstrated that Petitioner was "never sent on a retained jurisdiction program." (*Id.*)

### B.    *Clearly-Established Law*

Petitioner contends in Claim Twelve that the Due Process Clause required the court to place him on a rider program because the written judgment ordered it. Therefore, Claim Twelve asserts a substantive, rather than a procedural, due process claim. *Compare Wolff v. McDonnell*, 418 U.S. 539, 582 (1974), *with Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The principle of substantive due process prohibits the government from actions that "shocks the conscience" or that violate a right "so rooted in the

**MEMORANDUM DECISION AND ORDER - 22**

traditions and conscience of our people as to be ranked as fundamental or . . . implicit in the concept of ordered liberty." *Rochin v. California*, 342 U.S. 165, 169, 209 (1952) (internal quotation marks omitted).

### C.      State Court Decision

The Idaho Court of Appeals affirmed the denial of Petitioner's Rule 35 motion, holding that the written judgment's reference to 180-day rider or retained jurisdiction program was a clerical error. (State's Lodging H-17 at 3.) The court of appeals relied on the Idaho legal principle that "[t]he legal sentence consists of the words pronounced in open court by the judge, not the words appearing in the written order of commitment." *State v. Wallace*, 116 Idaho 930, 932, 782 P.2d 53, 55 (Ct. App. 1989).

### D.      Petitioner Is Not Entitled to Relief on Claim Twelve

The state courts' factual finding that the rider language was a clerical error is presumed correct because Petitioner has not shown that the finding is unreasonable. The judge who sentenced Petitioner expressly stated that the rider language was simply a mistake, and there is nothing in the record that calls that statement into question. Further, Petitioner has not established that the Idaho Court of Appeals' decision rejecting Claim Twelve was objectively unreasonable. The Court has found no United States Supreme Court case finding a due process violation based on a court or corrections department failing to comply with language that was mistakenly included in the written judgment as a clerical error.

## CONCLUSION

For the foregoing reasons, Petitioner is not entitled to habeas relief with respect to Claims Two, Four, Five, or Twelve, and his remaining claims were dismissed as procedurally defaulted. Therefore, the Petition will be denied.

## ORDER

**IT IS ORDERED:**

1.      Claims Two, Four, Five, and Twelve of the Amended Petition for Writ of Habeas Corpus (Dkt. 33) are DENIED on the merits. Because all of Petitioner's other claims were previously dismissed, this entire action is now DISMISSED with prejudice.

2.      The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: December 8, 2015

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 24**